UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER M. SANDERS,

        Plaintiff,

    v.                                          Case No. 11-C-405

ELIZABETH VARGAS,

        Defendant.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

**I. PROCEDURAL HISTORY**

On April 27, 2011, Christopher M. Sanders ("Sanders"), proceeding pro se, filed a complaint alleging that Elizabeth Vargas ("Vargas"), Niel Thoreson ("Thoreson"), Sally Tess ("Tess"), and Denise Symdon ("Symdon"), all persons involved in supervising his probation with the Wisconsin Department of Corrections ("DOC"), violated his constitutional rights. (Docket No. 1.) Accompanying his complaint was a motion for leave to proceed in forma pauperis. (Docket No. 2.) The matter was randomly assigned to this court and Sanders has consented to the full jurisdiction of a magistrate judge. (Docket No. 4.) The court screened Sanders' complaint and permitted him to proceed upon his claim that Vargas violated his First Amendment rights by retaliating against Sanders for certain complaints Sanders made regarding Vargas. (Docket No. 5.) The court dismissed all other claims and defendants. (Docket No. 5.) Sanders attempted to appeal this order, (Docket Nos. 6, 12), an effort that was rejected by the court of appeals, (Docket No. 26, 36).

Over the course of this case, Sanders has repeatedly requested the counsel be appointed to represent him. (Docket No. 7, 18, 33, 59). In response to Sanders' first request, the court, believing that the appointment of counsel would assist the parties and the court in efficiently handling this matter, made extensive but ultimately unsuccessful efforts to recruit an attorney to represent Sanders. When Sanders submitted a letter indicating that the court of appeals was awaiting this court's decision regarding the appointment of counsel before resolving his appeal, (Docket No. 18), the court recognized that any further delay was unlikely to result in finding an attorney willing to represent Sanders on a pro bono basis. The court concluded that Sanders had demonstrated sufficient knowledge and ability to deal with the issues presented in this case and that the appointment of counsel was unlikely to alter the outcome of this case, and therefore the court denied Sanders' motion. (Docket No. 19.) Sanders filed a renewed motion for the appointment of counsel, (Docket No. 33), which the court denied, noting again that it had tried unsuccessfully to recruit an attorney to represent Sanders, (Docket No. 44). Undeterred, shortly after the defendant filed a motion for summary judgment, Sanders filed yet another motion for the appointment of counsel, (Docket No. 59), which the court denied, noting again that it had tried but failed to identify an attorney willing to take his case for free, (Docket No. 61.) Nonetheless, the court stated that if this matter proceeded to trial, the court would renew its efforts to recruit an attorney to represent Sanders, if Sanders requested the court do so. (Docket No. 61.)

Recognizing that Sanders may have been delaying preparing a response to the defendant's summary judgment motion pending the court's resolution of his most-recent motion for the appointment of counsel, the court granted Sanders additional time to respond to the motion for summary judgment (from February 13, 2012 until February 27, 2012) and extended the defendant's reply deadline accordingly (until March 12, 2012). (Docket No. 61.)

This extension of time has led to Sanders' most recent "Request for Clarification" wherein he challenges the timeliness of the defendant's reply, believing that it should have been filed within 14 days of his response. (Docket No. 73.) Even though Sanders' response was filed on February 9, 2012, just one day after this court's order extending the deadline for Sanders' response (and thus this court's order and Sanders' response likely crossed in the mail), the defendant still had until the March 12, 2012 deadline set by the court in which to reply. A court's order setting specific deadlines will always trump the general deadlines set forth in the Federal Rules of Civil Procedure or this district's local rules.

During the pendency of this case Sanders also filed a motion for compel discovery, (Docket No. 33), which the court denied because the relief he sought was outside the scope of what was authorized under the Federal Rules of Civil Procedure. Sanders subsequently filed a motion asking the court to order a "John Doe" investigation and an evidentiary hearing. (Docket No. 60.) Both of these requests were denied. (Docket No. 61.) Sanders has also filed a "Request for Court Assistance" wherein he asks the court to assist him in obtaining evidence to support his case and preparing filings. (Docket No. 69.) This request seeks relief the court has no ability or authority to offer.

Dissatisfied with this court's resolution of his motion to compel and believing that the court's failure to recruit an attorney to represent him for free and other decisions were actually a product of some sort of prejudice against him, Sanders has made various attempts to have this matter heard by another judge. (Docket No. 43, 45, 74.) All of these efforts, including his most recent one, (Docket No. 74), are without merit. A litigant's dissatisfaction with a judge's rulings is not a valid reason to have the matter reassigned to another judge. (<u>See also</u> Docket No. 44 at 3.)

Currently pending before the court is the defendant's motion for summary judgment. (Docket No. 53.) Sanders has responded to this motion, (Docket No. 62, 63), and the defendant has

replied, (Docket No. 70). Therefore, the pleadings on this motion are closed and the matter is ready for resolution. All parties have previously consented to the full jurisdiction of a magistrate judge. (Docket Nos. 4, 23.)

**II. SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson, 477 U.S. at 248. A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

4

**III. FACTS**

Sanders was on probation as a result of a state criminal conviction and supervised by Vargas from October 2008 until November 2009. (Docket No. 71, ¶4.) (The parties offer a wide variety of details relating to Sanders' supervision but the court shall limit its discussion to those facts directly relevant to the present motion.) In May of 2009, Sanders requested that Thorenson assign him to another agent. (Docket No. 71, ¶20; see also Docket No. 56-2 at 12.) Such requests and complaints about agents by probationers are extremely common. (Docket No. 71, ¶21.) Sanders was given the opportunity to submit a formal request but Sanders declined to do so. (Docket No. 71, ¶¶23-25.)

Sanders subsequently stole a car and was arrested. (Docket No. 71, ¶30.) These events led to Vargas initiating proceedings to revoke Sanders' probation. (Docket No. 71, ¶31.) Sanders pled guilty to operating a motor vehicle without the owner's consent and was sentenced to two years of probation. (Docket No. 71, ¶32.) Department of Corrections staff decided to revoke Sanders' prior probation. (Docket No. 71, ¶36.) Following Sanders' revocation hearing, at which Vargas testified, the Administrative Law Judge issued a written decision revoking Sanders' probation as a consequence of the car theft offense. (Docket No. 71, ¶47; see also Docket No. 56-6.) An audio recording of this hearing was submitted as Exhibit 1005 to Vargas' affidavit, and the court has listened to this recording in addition to reviewing all documents submitted. (See Docket No. 56.)

Following the revocation of Sanders' probation, a discrepancy arose regarding the amount of supervision fees that Sanders owed. (Docket No. 71, ¶48-52.) Sanders contends that Vargas manipulated his supervision fees in retaliation for Sanders complaining about Vargas and asking to switch agents. (Docket No. 71, ¶48-52.) Vargas contends that supervision fees are calculated by administrative personnel through a computer program and an agent lacks the ability manipulate supervision fees. (Docket No. 71, ¶48-52.) The court shall refer to additional facts as necessary below.

## IV. ANALYSIS

Sanders alleges that Vargas violated his First Amendment rights by revoking his probation and miscalculating his supervision fees in retaliation for Sanders complaining about Vargas to her supervisor. To prevail on a claim under § 1983 on the basis that the plaintiff suffered some form of punishment or intimidation as a result of exercising a First Amendment right, a plaintiff must prove "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) a causal connection between the two." Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010) (internal quotation marks omitted). For the purposes of the present motion, the defendant does not dispute the first two elements. (Docket No. 54 at 7 fn. 2.)

With respect to the causal connection element, the plaintiff bears the initial burden to prove that the protected conduct he engaged in was a "motivating factor" for the defendant's actions. Greene v. Doruff, 660 F.3d 975, 979 (7th Cir. 2011). If the plaintiff meets this initial burden, the defendant may then present evidence that the harm the plaintiff suffered would have occurred regardless of his protected conduct. Id. Therefore, if the defendant can demonstrate by a preponderance of the evidence that the same outcome would have resulted irrespective of the plaintiff's protected conduct, and thus the plaintiff's exercise of his First Amendment rights was not a "but-for" cause of the harm he suffered, the plaintiff's claim must fail. Id. at 979-80.

Sanders' has a number of disagreements with the defendant's presentation of facts, going so far as to allege that the affidavits presented are perjurious. However, these disputes are not material to the issues before this court. Rather, the issues are very narrow. The first task for this court is to determine whether Sanders has presented sufficient evidence from which a reasonable finder of fact could conclude that Sanders' request to change agents was a motivating factor in Sanders' revocation and fee calculation. The court concludes Sanders has failed to meet this burden.

6

Sanders contends that his problems with Vargas and her alleged dislike of him began "from the first moment she met" Sanders, (Docket No. 64, ¶2), and thus long preceded his complaint about Vargas. In fact, it was because of pre-existing problems that Sanders complained about Vargas in May of 2009 and discussed changing agents. After Sanders' complaint, the problems were not exacerbated but rather they improved, so much so that Sanders decided to forego any further efforts to obtain a new agent. It was not until about six months later, intervening months free of any further complaints about Vargas to her supervisors or efforts to be reassigned to another agent, (Docket No. 71, ¶29), when Sanders stole a car and the revocation process was initiated, (Docket No. 71, ¶¶30-31). The inference that Sanders' complaint months earlier, which ironically led to an improvement of their relationship, was a factor in Sanders' revocation is not reasonable. It is undisputed that such complaints from probationers and requests for new agents are extremely common, (Docket No. 71, ¶21), and thus no reasonable finder of fact would conclude this routine part of Vargas' job was a factor in Vargas' decision to seek revocation of Sanders' probation, especially when Sanders quickly abandoned his complaint and effort to obtain a new agent rendering the matter inconsequential from Vargas' perspective. Therefore, considering the competent evidence presented, no reasonable finder of fact would be able to conclude by a preponderance of the evidence that Sanders' complaint was a motivating factor in his revocation. The same holds true for the allegation that Sanders' complaint was a factor in Vargas' alleged miscalculation of Sanders' supervision fees.

Sanders' allegation regarding supervision fees faces the additional obstacle imposed by the fact that Sanders has failed to present any competent evidence that Vargas had the ability to calculate, much less manipulate, his supervision fees. The evidence before this court demonstrates that "agents do not report supervision fees. Rather they are calculated automatically by a computer program. Adjustments can be manually made, which was what was done in [Sanders'] case [after

7

Sanders pointed out he was improperly charged for supervision for time when he was in custody]. However, agents are not responsible for these adjustments and they are overseen by office operations staff." (Docket No. 57-6.)

Aside from the error related to charges assessed for time Sanders was in custody, which was promptly corrected when Sanders pointed it out, Sanders has failed to present any evidence that the supervision fees were incorrect, much less intentionally and maliciously manipulated by Vargas as a result of Sanders' complaint.

Having concluded that Sanders' has failed to sustain his burden to demonstrate that his complaint was a motivating factor in Vargas' decision to seek revocation or the calculation of Sanders' supervision fees, the court need not discuss whether the defendant has demonstrated that the same outcome would have occurred regardless of his complaint. Nonetheless, for the sake of completeness, the court shall briefly discuss this aspect of the defendant's motion and how it provides a further reason as to why the court must grant Vargas' motion for summary judgment.

The record before this court demonstrates that Sanders' probation was revoked because he stole a car. There is no competent evidence that Sanders' complaint played any role in, much less was a but-for cause of, his revocation. Moreover, the same facts discussed above with respect to Sanders' failure to meet his burden to show that his complaint was a motivating factor in Vargas' actions, e.g., the length of time between Sanders' complaint and his revocation, the fact that the intervening time was marked by an improvement in the relationship between Sanders and Vargas and no further complaints or efforts to switch agents, the routineness of such complaints, and the fact that Sanders quickly abandoned his complaint rendering it largely inconsequential from Vargas' perspective; as well as the facts that supervision fees are automatically calculated by a computer program and any adjustments, when necessary, are made by support staff rather than

8

supervising agents, all would lead any reasonable finder of fact to conclude that Sanders' complaint was not a but-for cause of his revocation.

Sanders' allegations amount largely to a contention that Vargas did not like him from the first moment they met, resulting in her efforts to complicate his time on supervision. Even if the court was to accept Sanders' bald conclusions that because Vargas personally disliked him she made his supervision difficult resulting in revocation, this would not amount to a claim for a violation of the First Amendment. There is no constitutional right to be liked. Accordingly, the court shall grant Vargas' motion for summary judgment.

Also pending before the court is Sanders' motion to amend the complaint "to add 'BAD FAITH' to lists of damages/prayer for relief," (Docket No. 74 at ¶2 (capitals in original)), which shall be denied. This request to amend the complaint does not comply with Civil L.R. 15(b), fails to state a claim upon which relief may be granted, and is untimely, having been made only in response to the defendant's motion for summary judgment.

Finally, because Sanders appears to continue to be unclear why many of his claims were dismissed when this court initially screened his complaint, the court shall offer further clarification of its prior decision. Beginning with Sanders' claims against Denise Symdon and Sally Tess, Sanders alleged that each violated his constitutional right to Due Process and Equal Protection under the 14th Amendment by not responding to his complaints. However, the 14th Amendment protects individuals from state action; it generally does not provide a cause of action when a state fails to act. See e.g., DeShaney v. Winnebago County Dept. of Soc. Serv., 489 U.S. 189, 196 (1989). Therefore, a state actor generally does not violate an individual's constitutional rights by failing to respond to an individual's complaints. Sanders' complaint failed to contain allegations sufficient to demonstrate that this general rule does not apply. Thus, these defendants were dismissed.

9

Turning to Sanders' requests for preliminary injunctive relief, all of these requests for relief were improper and therefore were dismissed. A preliminary injunction is an extraordinary form of temporary equitable relief that is aimed at maintaining the status quo pending adjudication if it is necessary to prevent irreparable injury and the plaintiff demonstrate a likelihood of prevailing on the merits. See, e.g., Civil Rights and Civil Liberties Litigation: The Law of Section 1983 § 5.3 (citing Lasco v. Northern, 733 F.2d 477 (7th Cir. 1984)). An injunction is appropriate only if a legal remedy is insufficient to provide relief. Id. § 5.2.

Sanders' first three claims for preliminary injunctive relief essentially sought the court to enter a preliminary injunction requiring the defendants to answer certain questions. (Docket No. 1 at 8.) This is not an appropriate utilization of a preliminary injunction. There are many alternatives for an individual to obtain such information.

Sanders' fourth and sixth claims for preliminary injunctive relief sought the court to order the state to install a "working grievance system" and "a working accounting system," respectively. With respect to these claims, Sanders' complaint failed to contain sufficient allegations that in either instance, the existing systems are not "working." Rather, Sanders simply alleged that he was dissatisfied with the results. But more importantly, there is absolutely no indication that a legal remedy was inadequate or that there was substantial and immediate risk of irreparable injury. Moreover, any claim of future injury to Sanders was wholly speculative and thus insufficient to warrant the extraordinary judicial act of an injunction. See City of Los Angeles v. Lyons, 461 U.S. 95 (1983). Finally, with respect to Sanders' claim regarding the grievance system, there is no constitutional right to a grievance system. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011); Grieveson v. Anderson, 538 F.3d 763, 772-73 (7th Cir. 2008). Thus, there would be no basis for this court to order any change to the grievance procedure.

In his fifth claim for equitable relief, Sanders sought a preliminary injunction "guaranteeing me protection from further violations of my rights." (Docket No. 1 at 8.) Again, this claim for relief was based wholly upon speculation; there was no indication that Sanders' rights are under an immediate and specific threat. Moreover, legal remedies were sufficient to provide relief for any future violations of Sanders' rights.

Having concluded that all of Sanders' claims for injunctive relief were improper, this necessarily foreclosed all of Sanders' claims against the defendants in their official capacities. Because all defendants are state officials, Sanders' attempt to sue them in their official capacities was barred by the 11th Amendment. See Edelman v. Jordan, 415 U.S. 651, 663 (1974); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

**IT IS THEREFORE ORDERED** that Sanders' motion to amend the complaint, (Docket No. 74), is **denied**.

**IT IS FURTHER ORDERED** that Sanders' motion to change venue / judge, (Docket No. 74), is **denied**.

**IT IS FURTHER ORDERED** that Vargas' motion for summary judgment, (Docket No. 53), is **granted**. The Clerk shall enter judgment dismissing plaintiff's complaint and this action accordingly.

Dated at Milwaukee, Wisconsin this 17th day of April, 2012.

*[signature]*

AARON E. GOODSTEIN
U.S. Magistrate Judge